## Jim McGowen v. The State.

No. 2751.   Decided February 25, 1914.

Rehearing denied March 25, 1914.

**1.—Murder—Evidence—Motive—Charge of Court—Self-defense.**

Upon trial of murder, there was no error in admitting testimony that the brother of the defendant was charged with the murder of the half brother of the deceased, for the purpose of showing motive, etc., the record showing that the difficulty grew out of such former killing; besides, such testimony was withdrawn from the jury, and the court submitted a proper charge on the defendant's theory of self-defense.

**2.—Same—Argument of Counsel—Criticizing Court—Bill of Exceptions.**

In the absence of a proper bill of exceptions, the complaint that the district attorney, in his closing address, made disparaging remarks in regard to a member of this court can not be considered; besides, they could not have affected the trial of the case; however, if such remarks were made, they were highly improper.

**3.—Same—Bill of Exceptions—Motion for New Trial.**

In the absence of a bill of exceptions, matters complained of in the motion for new trial can not be reviewed on appeal.

**4.—Same—Newly Discovered Evidence.**

Where the alleged newly discovered testimony did not come within the rule prescribed for the granting of new trials on account thereof, there was no reversible error.

**5.—Same—Rule Stated—What Must Be Shown.**

The alleged newly discovered evidence must be shown to have come to defendant's knowledge since the trial, and that it was not owing to a want of diligence that it was not discovered before; that it was material, and not merely cumulative, corroborative or collateral, or of an impeaching character; and that it will probably produce a different result.

**6.—Same—Charge of Court—Self-defense.**

Where, upon trial of murder, the defendant pleaded self-defense and the court submitted a charge on the law of self-defense as applicable to the facts in evidence, there was no reversible error on that ground.

**7.—Same—Charge of Court—Manslaughter—Murder in Second Degree.**

Where, upon trial of murder, the evidence did not raise the issue of manslaughter, and the court submitted a charge on murder in the second degree, of which offense the defendant was found guilty, there was no error.

Appeal from the District Court of San Jacinto.   Tried below before the Hon. L. B. Hightower.

Appeal from a conviction of murder in the second degree; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

*F. O. Fuller* and *Wm. McMurrey,* for appellant.—On question of admitting evidence on motive and withdrawing:   Darnell v. State, 58 Texas Crim. Rep., 585, 126 S. W. Rep., 1122; Williford v. State, 36 Texas Crim. Rep., 414; Barth v. State, 39 id., 381.

On question of insufficiency of evidence: Miers v. State, 34 Texas Crim. Rep., 161; Milrainey v. State, 33 id., 577.

On question of court's charge: McMahon v. State, 46 Texas Crim. Rep., 540; Saint Clair v. State, 92 S. W. Rep., 1095.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, Judge.—Appellant was found guilty of murder upon implied malice, and his punishment assessed at seven years confinement in the State penitentiary.

The deceased, appellant and a number of others had been to Cold Springs the day of the homicide. It appears that Willis McGowen had been indicted charged with the murder of deceased's brother. On the way home a difficulty arose between Jack Harrison and George McGowen. The State's contention is that Willis McGowen walked up to the scene of the difficulty drawing a pistol, uttering threats, etc., and was shot while so doing, when appellant rushed to him, took his pistol out of his hands, ran after Tom Grace and shot him. Appellant, on the other hand, would have Willis McGowen and appellant acting as peace-makers between Jack Harrison and George McGowen when Willis McGowen was shot by Tom Grace, and that Grace, after shooting Willis McGowen, circled around looking back as if intending to shoot again, when appellant got a pistol out of the bosom of Willis McGowen and shot Tom Grace. Testimony was admitted that Willis McGowen was charged with the murder of Tom Grace's half brother upon the promise of the State to show that Tom Grace was a witness for the State in that case to show motive, etc., for his killing on this occasion. The State failed to make this proof when the testimony was withdrawn. The court in approving one of the bills of exception relating to this matter states: "Allowed with the following qualifications: When the district attorney offered this testimony he proposed to follow it up and show that Tom Grace was a witness in the case against Willis McGowen (brother of defendant) but when the district attorney examined the record of that case against Willis McGowen he found that Tom Grace was not a witness in that case. And the district attorney asked the court to withdraw all the testimony introduced in reference to that case, which the court did, and after that and immediately after the court withdrew that evidence from the consideration of the jury the defendant's counsel introduced the entire record of that case (State v. Willis McGowen) to show that Tom Grace was not a witness in that case. Mr. Manry, the district attorney, had already stated to the court in the hearing of the jury that he was mistaken when he said that Tom Grace was a witness against Willis McGowen, and in presence of the jury asked the court to withdraw all the testimony in reference thereto." No testimony was admitted as to whether Willis McGowen was or was not justifiable in killing John Harrison, if he did do so. None of the details of that transaction were

admitted, but merely the fact that "Willis McGowen was charged with having killed John Harrison, who was a half brother of Tom Grace, and he was over here that day, and that was the day Willis McGowen's case was to be called, and after it had been continued we all started home."

There can be but little doubt from this record that the difficulty between Jack Harrison and Jim McGowen grew out of the ill-will existing between the two families growing out of the killing of John Harrison. That if the deceased (Tom Grace) did kill Willis McGowen on this occasion, he did so out of feeling growing out of the killing of John Harrison by Willis McGowen, and in whatever light we view this transaction, the original cause of ill-will, and the promptness of all parties to act, all had its origin and inception, in part at least, out of the first killing, and a jury could not intelligently pass on the respective acts of the parties on this ocasion without knowing the origin of the unfriendly relations, and while the court withdrew the testimony from the jury at the request of appellant, yet we are of the opinion that the fact that Willis McGowen was charged with killing Grace's half brother would furnish a reason for the killing of Willis McGowen by Tom Grace as contended by appellant, and such testimony could not and would not be hurtful to this appellant, who contends that when Grace shot his brother Willis on this occasion, and was circling around as if seeking another opportunity to shoot, he got the pistol from Willis and fired at Grace. Certainly the action of the court presents no reversible error in the light of the following special charge given at appellant's request: "Gentlemen of the jury, you are further charged that if you find beyond a reasonable doubt, that if at the time the defendant, Jim McGowen, fired the fatal shot, if he so fired it, it reasonably appeared to him from the circumstances of the case, viewed from his standpoint, that the deceased was about to shoot him or his brother, Willis McGowen, he was justified in killing deceased, although in fact you, the jury, might believe from the evidence that defendant was in no danger at the time of being shot by deceased."

Bills of exception Nos. 3 and 4 were refused by the court, and we do not know why they are copied in the record.

Bill of exceptions No. 5 asserts that the district attorney in his closing address made disparaging remarks in regard to a member of this court. If this was done, of course this was highly improper, but the judge in approving the bill adopts the denial of the district attorney, who says he used no such language. Attorney for appellant attaches his affidavit asserting as a fact that such remarks were used, but he does not prove up the bill in compliance with the statute. Without passing on the merits of this controversy, we will content ourselves by saying that such remarks, if used, were entirely out of place, but they could and would not affect the jury in passing on the guilt or innocence of appellant, and under such circumstances the bill if properly proven up would present no reversible error.

There are several matters complained of in the motion for a new

trial to which no bill of exceptions was reserved, and, of course, we can not review these matters.

The alleged newly discovered testimony does not come within the rules prescribed for the granting of new trials on account thereof. The indictment in this case had the same names of Adeline Stanley and Beach Stanley endorsed thereon as witnesses for the State, consequently appellant was charged with notice that they would be used as witnesses, consequently he can not claim surprise as to their testimony, and if he was surprised by it he should then have made his motion to postpone, and not wait until verdict was rendered. If Lou Curtis was present at the time of the homicide, as contended in the motion for new trial and affidavit, appellant was aware of that fact as well before as subsequent to the trial, and knowing that Beach and Adeline Stanley would be witnesses in the case, the exercise of ordinary diligence would have discovered before trial the testimony of the witness Lou Curtis, a witness who is now desired to impeach the two Stanleys. Judge White, in his Annotated Procedure, lays down the following five rules essential to granting a new trial on account of newly discovered testimony: First, that the evidence came to his knowledge since the trial; second, that it was not owing to want of due diligence that it was not discovered before the trial; third, that it was material evidence, and not merely cumulative, corroborative or collateral; fourth, that it will probably produce a different result; fifth, that it is not simply for the purpose of impeaching a State's witness; that if the application is defective in establishing any one of these essentials, a new trial is correctly refused, citing a long list of authorities in sec. 1149 of his Annotated Procedure.

In addition to the hereinbefore copied special charge, the court on the issue of self-defense instructed the jury:

"A reasonable apprehension of death or great bodily harm will excuse a party in using all necessary force to protect his life or person, and it is not necessary that there should be actual danger, provided he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time, and in such case the party acting under such real or apparent danger is in no event bound to retreat in order to avoid the necessity of killing his assailant. And a party would have the same right to protect his brother from unlawful violence as he has to protect his own person from such violence, and the same rules announced above would obtain in his behalf.

"If from the evidence you believe the defendant killed the said Tom Grace but further believe that at the time of so doing the deceased by his acts (if any), or his acts coupled with his words (if any), caused him to have a reasonable expectation or fear that the deceased, Tom Grace, was about to shoot Willis McGowen again (if he did shoot him at all), or was about to shoot him, the defendant, and that, acting under such reasonable expectation or fear the defendant killed deceased, then you should acquit the defendant and say by your verdict not guilty."

This aptly presented this issue as made by the testimony, and there

was no error in refusing the other special charges requested on self-defense.

Appellant contends that the court erred in submitting the issue of murder in the second degree, ably contending that if the evidence would justify a finding that appellant was guilty of unlawful homicide, yet it would be of no higher degree than manslaughter. We have carefully studied the evidence, and from the State's standpoint we think it raised the issue of murder upon implied malice, and the court did not err in submitting that issue, and the evidence sustains the verdict.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied March 25, 1914.—Reporter.]